UNITED STATES DISTRICT COURT          **ORIGINAL**
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

FRANCIS FOGARTY, JR.,

     Plaintiff,            Civil Case No. 15-v-01454
                           (GLS/DJS)

     -against-

CITY OF TROY and City of Troy Police Officers KYLE
JONES and ROBERT SMITH, both individually and/or as
agents, servants, and/or employees of the City of
Troy,

     Defendants

------------------------------------------------------------

     EXAMINATION BEFORE TRIAL of the Defendant, Troy

Police Officer **KYLE JONES**, held pursuant to notice, on

January 23, 2017, at 11:05 a.m. in the law offices of

Bailey, Johnson, DeLeonardis & Peck, PC, Pine West

Plaza 5, Suite 507, Washington Avenue Extension,

Albany, New York, before Mary Ellen Tardiff, a

Shorthand Reporter and Notary Public in and for the

State of New York.


APPEARANCES:

For the Plaintiff:
THE KINDLON LAW FIRM, PLLC
74 Chapel Street
Albany, New York 12207
GENNARO D. CALABRESE, ESQ.

For the Defendant City of Troy:
RICHARD T. MORRISSEY, ESQ.
Corporation Counsel
City of Troy
245 River Street
Troy, New York 12180

For the Defendants Kyle Jones and Robert Smith:
Bailey, Johnson, DeLeonardis & Peck, PC
Pine West Plaza 5, Suite 507
Washington Avenue Extension
Albany, New York 12205
BY:  JOHN W. BAILEY, ESQ.

Also Present:
Robert Smith


**S T I P U L A T I O N S**


   IT IS HEREBY STIPULATED AND AGREED by and between

the attorneys for the respective parties hereto that

presence and oath of a Referee be waived;

   IT IS FURTHER STIPULATED AND AGREED that the

transcript be signed and that the filing of the

original transcript with the Federal Court be waived;

   IT IS FURTHER STIPULATED AND AGREED that all

objections, except as to form, are reserved until the

time of trial;

   IT IS FURTHER STIPULATED AND AGREED that this

1    of your employment as a City of Troy police officer?

2         A.    Correct.

3         Q.    What materials, if any, did you review

4    prior to coming to this deposition?

5         A.    The materials were the incident reports,

6    some audio files of Internal Affairs, things like that

7    pertaining to the arrest report and incident report.

8    Things of that nature.

9         Q.    Did you have any notes that you've taken

10   that you reviewed prior to coming here today?

11        A.    No.

12        Q.    So would it be fair to say any documents

13   reviewed were documents that are in the possession of

14   the City of Troy Police Department?

15        A.    Yes.

16        Q.    Okay.  Now, beside your attorneys, did you

17   speak to anyone in preparation of today's deposition?

18        A.    No.

19        Q.    Is it fair to say you're currently

20   employed by the City of Troy Police Department?

21        A.    Yes, I am.

22        Q.    How long have you been employed by them?

23        A.    Almost six years.

1  words and, as you said, flailing their arms.  What did

2  you observe happen next?

3      A.    There was, there was yelling and screaming.

4  There was pushing and shoving, physical fight.

5      Q.    Between whom?

6      A.    Between Mr. Fogarty and another patron or

7  citizen, bystander standing on the sidewalk.

8      Q.    As you sit here today do you remember who

9  that was?

10     A.    I don't.

11     Q.    So how much time lapsed between his

12  confrontation with Miss Fogarty and him exchanging

13  shoves with another individual?

14          MR. BAILEY:  Object to the form.

15          You can answer.

16     A.    I'm trying to just answer the best I can.

17  The time between the argument or disagreement between

18  Miss Fogarty and then the citizen, the other bystander?

19  Is that what you're asking?

20     Q.    It's my understanding you testified there

21  was some pushing and shoving that you observed?

22     A.    Yes.

23     Q.    Who was that between?

1     A.    That initially was between the citizen and

2 Mr. Fogarty.

3     Q.    Okay.  So how much time lapsed between

4 when you observed Mr. Fogarty and the other citizen

5 making contact and Mr. Fogarty and Miss Fogarty having

6 a verbal confrontation?

7           MR. BAILEY:  Object to the form.

8     A.    I mean I could try to give you --

9           MR. BAILEY:  Yes.  It's not

10           appropriate for me to intervene, but I

11           do object to the form.  You want to go

12           off the record for one second?

13           (Discussion was held off the

14           record.)

15     Q.    So there came a point in time where you're

16 sitting in the patrol car, correct?

17     A.    Yes, sir.

18     Q.    And you see a confrontation between whom

19 you now know to be Miss Fogarty and Mr. Fogarty?

20     A.    Correct.

21     Q.    It's my understanding what you saw was the

22 exchange of words and hand movements?

23     A.    Yes.

1  you know, as far as my attention always drawn to him,

2  there was a lot of people there moving around.  So, you

3  know, my attention bounced between other subjects that

4  were there.  But he didn't leave the area.

5      Q.    What, if anything, did you do when you

6  observed Mr. Fogarty and Miss Fogarty have physical

7  contact with each other?

8      A.    I got out of my patrol car and tried to

9  speak with Mr. Fogarty.

10     Q.    Okay.  And when you say "tried to speak

11 with" him, why do you say "try"?

12     A.    It was difficult to get his attention.  He

13 was agitated.  He appeared as though he was

14 intoxicated.  He, you know, didn't necessarily care or

15 understand that a police officer in uniform, you know,

16 there was a presence, that I was there.  And he didn't

17 care that I was there or I was even explaining to him,

18 listen to me.  You need to stop what you're doing.

19     Q.    When you walked out of your patrol car,

20 fair to say you walked directly over to where Mr.

21 Fogarty was?

22     A.    Yes.

23     Q.    What, if anything, did you do to get his

1  attention?

2      A.    I don't remember my, the context of my exact

3  words.  But, you know, I would imagine I'd say, hey,

4  sir.  Hey, buddy.  Something to that nature to get his

5  attention.  Stop.  Look at me.  Talk to me.  Something

6  of those, of that nature.

7      Q.    Did he -- did he say anything to you when

8  you were approaching him?

9      A.    Not that I can remember.

10      Q.    After you said something to him, do you

11  remember him saying anything to you at that point?

12      A.    I mean, the exchange between myself and him

13  is specifically when I was trying to arrest him.  And I

14  was telling him he was under arrest and that to put his

15  hands behind his back.  What I recall about the

16  incident was him saying, you're not going to arrest me.

17  I don't do anything wrong.  Arrest her.  He didn't want

18  to be arrested.

19      Q.    Where did this take place?  Was it on the

20  sidewalk, in the street, or someplace else?

21      A.    I remember it being in the street.  I mean,

22  it could have carried over from the sidewalk and back

23  at the street.  We weren't stationary, you know.  We

1    They had -- he was involved in a verbal altercation.

2    He was flailing his arms around. That escalated to

3    some physical altercations between Mrs. Fogarty and

4    another, another citizen that was there where other

5    people were just simply standing around not fighting,

6    Mr. Fogarty, you know, had committed, had committed a

7    crime. Was yelling and screaming and causing a

8    disturbance. So my attention focused towards him.

9         Q.    When you say he committed a crime, what

10   penal law or what penal violations did he commit?

11        A.    Initially when he, you know, slapped or

12   punched or physically contacted another person, either

13   Mrs. Fogarty or the other citizen on the road or the

14   sidewalk, he committed harassment. You know, the penal

15   law violation of harassment.

16        Q.    So when you told -- you testified earlier

17   that you told Mr. Fogarty he was under arrest, right?

18        A.    Yes, sir.

19        Q.    And so is it fair to say that he was under

20   arrest for harassment second degree?

21        A.    Yes.

22        Q.    And you testified -- just so it's clear --

23   you testified earlier, just so it's clear for me, were

1   you arresting him for his physical contact with Miss

2   Fogarty, his physical contact with the other civilian,

3   or both?

4       A.   I'd have to look at the context of the to

5   wit section in the harassment accusatory in order to,

6   you know, give you a very, very specific answer to

7   that.  I mean, you know, he committed the violation and

8   that was why I approached him and started to place him

9   under arrest.

10      Q.   Did you have any intention of also issuing

11  -- did you have any attention of also charging Miss

12  Fogarty with harassment second?

13              MR. BAILEY:  Object to the form.

14              You can answer.

15      A.   Intention of arresting her?  I mean, look,

16  in a perfect world if I could have had more police

17  officers there and we could have arrested everybody

18  that was causing the issue, then it would have been

19  possible to do that.  But I was only one person at the

20  time.  So I had to pick, you know, the primary

21  aggressor, so to speak, which I determined to be Mr.

22  Fogarty and the fact that he, you know, harassed Mrs.

23  Fogarty and then also a citizen and then was escalating

1    him to put his hands behind his back to place him in

2    custody. He, as I said before he, you know, refused to

3    do that. He -- when I would try to grab his arms to

4    sort off of coach him to put his hands behind his back,

5    he violently pulled his hands away and his arms away.

6    He physically elbowed me in the face during the process

7    of me trying to place him under arrest. He continued

8    to resist arrest specifically pulling his hands away,

9    you know, refusing to listen to my orders.

10       And then subsequent Sarah Fogarty got involved.

11    She came from behind. Pulled me. Punched me. Pushed

12    me in a fashion to sort of keep me from arresting Mr.

13    Fogarty and then Mr. Fogarty, because of that sort of

14    interruption, he was able to get up and run away.

15       Q. Where did Mrs. Fogarty punch you?

16       A. From what I remember she came from behind,

17    so like my back or side. Grabbed at me to try to get

18    me, to pull me away from Mr. Fogarty.

19       Q. And you said Mr. Fogarty was able to get

20    up and run?

21       A. Correct.

22       Q. At what point was he on the floor?

23         MR. BAILEY: Object to the form.

1      A.     I don't remember if I was equipped with one

2   that night.

3      Q.     You had a baton on you, right?

4      A.     Yes.

5      Q.     When you stepped out of the patrol car and

6   walked toward Mr. Fogarty, did you have your baton in

7   hand?

8      A.     I don't specifically remember if I had it in

9   my hand or holstered when I first exited the vehicle.

10  At some point in time I did have, throughout that

11  altercation I did have the baton in my hand because I

12  recall when I was running I was holding onto it so it

13  wouldn't fall out or get lost.

14     Q.     Do you remember at what point you took it

15  out?

16     A.     Specifically, I do not.  During, during that

17  incident I remember having it out.  Specifically when,

18  I don't remember.

19     Q.     Before you got out of the patrol car did

20  you use the radio?

21     A.     What do you mean by "use the radio"?

22     Q.     Did you call in stating that there are

23  physical altercations outside of Bootlegger's?

1    A.    At some point in time I did, yes, get on the

2    radio, notify the dispatcher of my location and what

3    type of incident I had.

4    Q.    Do you remember whether or not you did

5    that before you approached Mr. Fogarty?

6    A.    I don't.  There is a record of it but, you

7    know, I haven't -- it's been almost four years and I

8    haven't listened to it since then.  So I don't -- I

9    mean, specifically what the transmissions were, I

10   don't.  I assume there's a record still on file and

11   that can be reviewed, but I don't remember.

12   Q.    Have you ever made an arrest in front of

13   Bootlegger's before?

14   A.    I can't specifically -- like, there isn't an

15   arrest that stands out.  It's possible that I did and

16   it's possible that I haven't either.  I don't remember

17   specifically anyone that stands out in front of

18   Bootlegger's.

19   Q.    Prior to this incident at any point in

20   time did you ever review the security footage -- let

21   me withdraw that and say that again.  Prior to your

22   interaction with Mr. Fogarty, at any point in time in

23   your role as a Troy police officer did you have the

1     Q.    I understand.  But I just want to make

2   clear that you're testimony is not that he was

3   intentionally trying to strike or hit or, you know,

4   combat either you or Officer Smith?

5               MR. BAILEY:  I object to the form.

6               The answer speaks for itself.  But to

7               the extent you can answer that, go

8               ahead.

9     A.    It's hard to understand what his intentions

10  were.  I mean, as you just stated, he struck a female

11  right in front of a police officer.  So what his

12  intentions were, I don't know.  I did not, from my

13  perspective and point of view, see him strike Officer

14  Smith.  But was it his intention to do that to get

15  away?  That's a possibility.  I simply don't know what

16  his intentions were.

17    Q.    All right.  So what happened next?

18    A.    I delivered two baton strikes in rapid

19  succession from within close proximity to Mr. Fogarty's

20  right shoulder, upper torso.  After the baton strikes,

21  Mr. Fogarty started to comply meaning that he stopped

22  physically trying to get away, flailing his arms,

23  kicking his feet, pulling away from Officer Smith and